PEOPLE *v.* BYRD.

Opinion of the Court.

1. Criminal Law—Constitutional Law—Assistance of Counsel—Evidence—Admissions of Guilt.

Once a criminal investigation has focused upon a suspect the right to counsel attaches and if a suspect has requested and has been denied counsel and has not been effectively warned by the police of his right to remain silent, then he has been denied the assistance of counsel and no statement thus elicited may be admitted against him at a criminal trial (US Const, Ams 6, 14).

2. Same—Constitutional Law—Right to Remain Silent After Guilty Plea.

Trial judge who made a determination that defendant's plea of guilty to charge of indecent liberties with child under the age of 16 years was freely, understandingly, and voluntarily given under Court rule and statute *held*, not required to advise defendant of his constitutional right to remain silent after his plea of guilty had been offered and when defendant was represented by counsel in open court (US Const, Ams 6, 14; CLS 1961, § 750.336; CL 1948, § 768.35; GCR 1963, 785.3[2]).

References for Points in Headnotes

[1] 21 Am Jur 2d, Criminal Law §§ 312, 313; 29 Am Jur 2d, Evidence §§ 555–557.
[2] 21 Am Jur 2d, Criminal Law §§ 486, 487; 29 Am Jur 2d, Evidence § 557.
[3] 21 Am Jur 2d, Criminal Law §§ 495, 496.
[4] 21 Am Jur 2d, Criminal Law § 504.
[5] 39 Am Jur, New Trial §§ 13, 131, 201.
[6] 21 Am Jur 2d, Criminal Law § 506.
[7] 21 Am Jur 2d, Criminal Law § 486.
[8–11] 21 Am Jur 2d, Criminal Law § 485.
[12] 21 Am Jur 2d, Criminal Law §§ 485, 504, 505.

3. SAME—NONPREJUDICIAL ERROR—DATE OF OFFENSE.

Trial judge who misstated without defendant's objection the date of defendant's offense after a plea of guilty was tendered to taking indecent liberties with a child under the age of 16 years *held,* not to have committed prejudicial error, where a witness testified that the offense occurred on the date charged in the information (CLS 1961, § 750.336).

4. SAME—WITHDRAWAL OF GUILTY PLEA.

There is no absolute right on the part of accused to withdraw a plea of guilty.

5. NEW TRIAL—DISCRETION OF COURT.

The granting of a motion for a new trial rests within the sound discretion of the trial court.

6. CRIMINAL LAW—WITHDRAWAL OF GUILTY PLEA AFTER SENTENCING.

Trial court's denial of defendant's motion to withdraw his plea of guilty to taking indecent liberties with a child under the age of 16 years *held,* not to be an abuse of discretion where defendant's motion was made almost 2 months after sentence was imposed (CLS 1961, § 750.336).

7. SAME—CREDIBILITY OF WITNESSES—DISCRETION OF TRIAL COURT.

Trial court's determination that defendant's plea of guilty to taking indecent liberties with a child under the age of 16 years was voluntary *held,* to be no abuse of discretion, since the trial judge chose to believe the lawyer who represented the defendant at the time of the guilty plea, who testified that he did not promise defendant anything, after hearing and observing defendant's witnesses who testified that defendant's counsel promised defendant he could get defendant placed on probation if he pled guilty (CLS 1961, § 750.336).

CONCURRING OPINION.

LEVIN, J.

8. CRIMINAL LAW—PLEA BARGAINING.

*While neither the Supreme Court of the United States nor the the Supreme Court of Michigan has expressly approved of plea bargaining, plea bargaining is so universally practiced that one must assume, until they speak otherwise, that they do not object to it.*

9. SAME—GUILTY PLEA—VOLUNTARINESS—INDUCEMENT.

*A fulfilled or discharged, as distinguished from an unfulfilled, promise of charge concession to a criminal defendant does not affect the voluntariness of a guilty plea.*

10. Same—Plea Bargaining—Public Policy.

> *Plea bargaining is an expedient. It violates fundamental principles of both government in general and the judicial process in particular. It is inconsistent with established standards, those regarding the exercise of discretion by public officers and those surrounding the administration of justice generally.*

11. Same—Appeal and Error—Guilty Plea Induced by a Promise of Probation.

> *Trial court's determination that defendant's plea of guilty to taking indecent liberties with a child under the age of 16 years was not induced by a promise of probation by his own lawyer held, not clearly erroneous (CLS 1961, § 570.336).*

12. Same—Evidence—Voluntariness of Guilty Plea—Inducement Offered to Accused.

> *If a reasonable doubt is created by the evidence presented on a motion to withdraw a plea of guilty that an accused's plea was given only after a false promise of leniency was made to him by the prosecutor or defense counsel, the plea should be set aside.*

Appeal from Recorder's Court of Detroit, Gillis (Joseph A.), J.   Submitted Division 1 December 13, 1966, at Detroit.   (Docket No. 1,449.) Decided June 28, 1968.   Leave to appeal denied September 13, 1968.   See 381 Mich 775.

Leonard Byrd was convicted of taking indecent liberties with a child under the age of 16 on his plea of guilty.   Defendant appeals.   Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Samuel H. Olsen,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer and *Richard J. Padzieski,* Assistant Prosecuting Attorney, for the people.

*McWilliams & McWilliams,* for defendant.

BURNS, J. The defendant was charged on a 2-count information with carnal knowledge of a female under 16 (statutory rape)[1] and indecent liberties with a female under 16,[2] on January 6, 1965. Complaint was filed and warrant issued on May 7, 1965. The defendant, represented by counsel whom he had retained, waived preliminary examination. He stood mute at the arraignment on the information again with counsel present. The record further shows an adjournment of trial and the filing of a consent of substitution of attorney. Trial was held by the court on August 24, 1965, upon defendant's waiver of a jury trial. The court heard the testimony of a policewoman who briefly related the complainant's version of the events which led to this action. The court then called on the defendant and said:

"*The Court:* Your attorney informs me at this time you wish to withdraw your plea of not guilty to the 2 counts in the information.

"The first count is carnal knowledge of a female minor under 16, which carries a possible sentence of any number of years up to and including life.

"The second count is indecent liberties with a child under 16, which carries a possible maximum of 10 years.

"You wish to plead guilty to the second count, is that right?

"*The Defendant:* Yes, sir."

The court then questioned the defendant pursuant to the requirements of GCR 1963, 785.3(2), accepted the plea, and set September 8 for sentencing, when sentence was imposed.

Almost 2 months later, on November 4, 1965, defendant sought by motion, supported by his own

---

[1] CLS 1961, § 750.520 (Stat Ann 1954 Rev § 28.788).
[2] CLS 1961, § 750.336 (Stat Ann 1954 Rev § 28.568).

affidavit, to withdraw his plea of guilty on the
ground that the plea was made in reliance upon his
counsel's representations and assurances that if he
agreed to the entry of the plea he would be placed
on probation. A hearing was granted the next day
and the motion denied.

Defendant then appealed to this Court. Two
additional affidavits were submitted to support the
claim. This Court remanded the matter for further
post-conviction proceedings to inquire into the vol-
untariness of defendant's plea of guilty. This was
objected to by defendant. The proceedings were
had on May 16, 1966. Defendant pursues his appeal.

Defendant raises several issues on appeal which
we rephrase and consider. The first such issue is
whether a trial judge is required to advise the de-
fendant of his constitutional right to remain silent
after a plea of guilty is offered by the defendant in
open court.

Defendant cites *Escobedo* v. *Illinois* (1964), 378
US 478 (84 S Ct 1758, 12 L Ed 2d 977), in his
argument on this point. *Escobedo* dealt with the
time during the investigatory process, prior to trial,
at which right to counsel attaches, and held in es-
sence that once the investigation had focused upon
a suspect, if the suspect had requested and had
been denied counsel, and had not been effectively
warned by the police of his right to remain silent,
then he had been denied the assistance of counsel
and no statement thus elicited could be used against
him at a criminal trial. *Miranda* v. *Arizona* (1966),
384 US 436 (86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d
974), which is not applicable to the case at bar
since it is not applied retroactively,[3] further clari-
fied the procedural safeguards which must surround

---

[3] See *Johnson* v. *New Jersey* (1966), 384 US 719 (86 S Ct 1772,
16 L Ed 2d 882).

in-custody interrogation. In neither *Escobedo,* nor in *Miranda* did the United States Supreme Court consider the problem presented to this Court by the case at bar.

Here the defendant is not alone in a hostile atmosphere surrounded by persons charged with the duty of ferreting out crime. Rather, he is a man duly accused of a criminal offense who has been afforded the protection of counsel in the proceedings which preceded this trial, who now stands, with his attorney at his side, at the bar of justice, and tenders a plea of guilty. By so doing, he admits generally to the specific charge to which the plea is directed. At this point there is no necessity for proving the defendant guilty; this is admitted by the plea. The inquiries by the court which follow this tender by the defendant are not posed to establish his guilt by the trial process, but rather to enable the court to determine whether the plea was "freely, understandingly, and voluntarily made". GCR 1963, 785.3(2).[4] This Court rule and its predecessor, Michigan Court Rule No 35A (1945),[5] and the statutory provisions of CL 1948, § 768.35 (Stat Ann 1954 Rev § 28.1058), were specifically intended, and here properly employed, to protect the defendant under circumstances such as those presented in the case before us.

Defendant's second assignment of error evolved from circumstances described herein. As previously noted, the information filed in this cause alleged that the criminal acts in question were perpetrated on or about January 6, 1965. The only witness who testified at the trial, prior to the tender of the plea— the acceptance of which terminated the trial proceedings—was Detroit policewoman Fanny Jane

---

[4] See *People* v. *Coates* (1953), 337 Mich 56; and *People* v. *Daniels* (1966), 2 Mich App 395.
[5] See 318 Mich xxxiv.

Hendrick. She was permitted to testify, without any objection by defendant, that the complaint was that the overt act in question occurred on or about the 6th day of January, 1965. After the plea of guilty was tendered, the trial court undertook to examine the defendant. In the course of the examination, the judge said, "You understand the second count charges that on or about the 6th day of June of this year [1965]". The second error alluded to above thus emerges. The defendant asserts error in this misstatement of the date of the offense by the court. We find from a reading of the complete record of the proceedings that the statement by the trial judge was erroneous. However, reversal cannot be predicated thereon. The error in no way prejudiced the defendant concerning the testimony of policewoman Hendrick, the information which was filed, and the purposes for which the question was asked. No objection was made to this misstatement at the time, which adds weight to our finding that it was without prejudice. We might fairly assume from this that it was an inadvertent slip of the tongue which went unnoticed by all parties.

The assignment of error that attempts to raise an issue from the use of leading questions by the trial court in an examination which is in accord with GCR 1963, 785.3(2), is devoid of merit and necessitates no further amplification here.

The defendant further assigns error in the failure of the trial court to grant his motion of November 4, 1965, whereby he sought to withdraw his plea of guilty upon which sentence had been pronounced on September 8, 1965. A hearing was held on this motion which resulted in its denial. The defendant does not have an absolute right to withdraw a plea of guilty. See *People v. Case* (1954), 340 Mich 526; and *People v. Davis* (1964), 372 Mich 402, and cases cited therein. The granting of a motion for

a new trial rests within the sound discretion of the trial court. See *People* v. *Lowenstein* (1944), 309 Mich 94; *People* v. *Barrows* (1959), 358 Mich 267; and *People* v. *Zaleski* (1965), 375 Mich 71. It is particularly relevant to our finding of no abuse of discretion in the instant case to note again that this motion to withdraw the plea of guilty was not made *prior* to sentencing, but rather the relief was sought almost 2 months thereafter. See *People* v. *Walls* (1966), 3 Mich App 279. We will not allow the judicial process to be abused merely because the defendant is dissatisfied with the sentence imposed.

As we noted in our review of the facts which culminated in the instant appeal, this case has been before our Court once before. At that time the defendant claimed that the plea of guilty was not voluntarily made and we remanded for an evidentiary hearing on that point. The transcript of the hearing so ordered is a part of the record before us at this time. A review of the proceedings and the trial judge's determination that the plea was voluntary discloses no reversible error. The trial court heard the witnesses, observed their demeanor, and was apprised of the respective interests of the parties. The defendant was allowed to take the stand and to testify as to the issue of voluntariness. The trial judge chose to believe the counsel who represented the defendant at the time of the filing of the plea of guilty. We find neither error in the judgment of the trial court nor reason to substitute our judgment for his. See *People* v. *Geddes* (1942), 301 Mich 258; *People* v. *Martino* (1944), 308 Mich 381; and *People* v. *Martin* (1965), 1 Mich App 265.

The remaining assignments of error are wholly without merit.

Affirmed.

Lesinski, C. J., concurred with Burns, J.

Levin, J. (*concurring*). The trial judge's finding that the alleged promise of probation was not in fact made is not clearly erroneous and, so, we must affirm.

I write separately to speak about plea bargaining, and, more particularly, about charge reduction in return for a plea of guilty.[1] While neither the Supreme Court of the United States nor of this State has expressly approved of plea bargaining, plea bargaining is so universally practiced that one must assume, until they speak otherwise, that they do not object. This is why I concur, rather than dissent, in the decision here, even though, for reasons about to be stated, I believe the plea bargaining practice is unsound.

## I.

While there is a dispute whether the defendant Byrd was promised probation in return for his plea of guilty, there is one promise which indisputably was made to him. If he would plead guilty to the reduced charge of indecent liberties, for which the maximum sentence is 10 years, he would not have to stand trial for statutory rape for which the maximum sentence is life.

Defendant's appellate counsel termed the process by which the defendant was led to plead guilty as one of "beg, bargain and barter." Over 85% of the felony convictions in Detroit in a recent year were based upon pleas of guilty.[2] Most of those were

---

[1] Sentence concessions in return for a plea of guilty are discussed in *People v. Earegood* (1968), 12 Mich App 256. For still another aspect of plea bargaining, see *People v. Hollman* (1968), 12 Mich App 231.

[2] The President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts (1967), hereinafter cited as Task Force Report, contains a study of Detroit

preceded by plea bargaining. Typically, the defendant or his counsel approaches the prosecutor and "begs" for charge reduction. The "bargaining" follows, generally resulting in the "barter." The defendant agrees to plead guilty to a lesser included or a lesser added offense on the understanding that the prosecutor will not press the higher originally charged offense. The practice is not peculiar to Detroit. It is common throughout the State[3] and country[4] and has generally received judicial approval. (See part V, *infra*)

---

recorder's court, with 1963–1965 figures, pp 129–138. In 1966 and 1967, the figures were 85.27% and 88.77%, respectively. Annual Report, The Recorder's Court of the City of Detroit, Michigan (1966), p 6; *id.* (1967), p 7.

"Observations of the guilty plea process in recorder's court made it unmistakably clear that the high rate of pleas was heavily dependent upon the inducement of charge reduction to get a guilty plea entered. For example, a study of 188 sample felony cases in recorder's court in 1962 showed that 19 were disposed of by guilty pleas to the original charge, whereas 113 pleas were entered to reduced charges." ABA Foundation, Law Enforcement in the Metropolis, a working paper on the criminal law system in Detroit (1967), p 132.

[3] For a discussion of the mechanics of plea negotiation in Michigan, see Newman, Conviction: The Determination of Guilt or Innocence Without Trial (1966), pp 78–83. For further discussion of the mechanics of the system in Detroit, see footnote 2, *supra.*

[4] "A substantial percentage of guilty pleas are the product of negotiations between the prosecutor and defense counsel or the accused * * * under which the accused will enter a plea of guilty in exchange for a reduced charge or a favorable sentence recommendation by the prosecutor." Task Force Report, p 9.

Even a guilty man who desires to plead guilty needs a lawyer, frequently at State expense, to negotiate a deal on the best obtainable terms: "Too often the result may be excessive leniency for professional and habitual criminals who generally have expert legal advice and are best able to take full advantage of the bargaining opportunity. Marginal offenders, on the other hand, may be dealt with harshly, and left with a deep sense of injustice, having learned too late of the possibilities of manipulation offered by the system." Task Force Report, p 11.

Some accused persons waive counsel in a desperate effort to curry favor. If one can obtain a charge concession in exchange for a guilty plea, it is understandable that some may believe additional concessions may be obtained by full "cooperation", the waiving of counsel. Newman, Pleading Guilty for Consideration: A Study of Bargain Justice, 46 J Crim LC & PS 780, 783–785 (1956).

Plea bargaining is so common that a structure of potential bargains has developed. One charged with X will generally be permitted to plead to the lesser included offense of X–1 or possibly X–2, or attempted X or the added offense of Y.

Why do prosecutors bargain and barter? Simply because it is not possible with present resources to try even a fraction of those charged by the prosecutor. In Detroit less than 5% of the felony dispositions are accomplished by jury trial, 8% are tried to a judge sitting without a jury. Guilty pleas, dismissals, and reductions to misdemeanors with accompanying guilty pleas account for the rest. Yet the docket continues to fall behind, despite valiant efforts of prosecutor and judge to bring cases to trial. If everyone entitled to a jury trial insisted on it, the attempt to administer justice with present resources would collapse altogether. Thus, prosecutors must bargain and judges must accept pleas to reduced charges whether they like it or not.

That is not to say there are not standards. They vary between the counties depending on many disparate factors. Prosecutors will not deal with everyone. Judges not infrequently refuse to accept a plea to a lesser or added offense. But by and large prosecutors deal and judges accept the deal, and were it otherwise the backlog would become completely intolerable.

Most of those who do the "begging" beg with good reason. They are guilty and could be convicted upon trial of the originally charged offense. To them the present system is a boon.

Plea bargaining has staunch defenders on all sides of the bar. It is efficient. It eliminates "unnecessary" trials. It permits lawyers to accomplish something for highly convictable clients.

On pragmatic grounds plea bargaining not only makes sense, it has become virtually indispensable.

But it is, nevertheless, eroding law enforcement,[5] respect for the law[6] and the judicial process.

## II.

Plea bargaining violates several fundamental principles of both government in general and the judicial process in particular, principles on which there is total agreement except when it comes to plea bargaining.

*First,* discretion confided to a public officer should be exercised freely, on the merits, on the basis of the policy which justifies confiding discretion to that public officer.

It is undoubtedly part of the prosecutor's job to individualize justice. The prosecutor has a broad charging discretion.[7] It is the prosecutor who de-

---

[5] Many oppose minimum sentence laws. However, use of plea bargaining successfully and continuously to avoid what some regard to be "harsh and outdated" laws [Newman, Conviction: The Determination of Guilt or Innocence Without Trial (1966), p 90; Task Force Report, pp 10, 11] may actually prevent proper legislative reform, by shielding from visibility the mandated, supposedly harmful results. The inequities of "unwise" laws, therefore, remain on the books to be used against a few unfortunates unable to obtain the dispensations generally available.

[6] "The convicted person finds in this practice confirmation of his belief in the futility of reform." Dash, Cracks in the Foundation of Criminal Justice, 46 Ill L Rev 385, 394 (1951).

"Cases of conventional felonies that are 'settled' may well result in strengthening attitudes which favor a general disregard for law and for justice * * *. If conviction on a charge is to be determined in great part by skill of the offender in bargaining with the court or in hiring a lawyer to bargain for him, then our concept of impartial justice based upon facts and rules of evidence becomes meaningless." Newman, Pleading Guilty for Consideration: A Study of Bargain Justice, 46 J Crim LC & PS 780, 790 (1956).

[7] Statutes making it a crime not to comply with provisions designed to regulate commercial and business practices, and statutes declaring crimes *malum prohibitum* are passed on the assumption the prosecutor will enforce them selectively. It is not intended that every person who violates a *malum prohibitum* statute will, at least upon the first offense, be charged. Even in the case of the common-law crimes, those *malum in se,* the prosecutor enjoys a large discretion; and this is as it should be. There are many cases where the public interest is best served by charging the offender with X-1, X-2, or even Y rather than X. The prosecutor may properly exercise

cides whether there is adequate evidence and the
"social desirability of commencing or preventing
prosecution for other reasons than probability of
guilt."[8]

As long as the prosecutor sticks to the merits,
the facts preceding and surrounding the commis-
sion of the crime, the history of the offender and the

---

his discretion and originally charge or later, after receiving more
complete information, move the court to eliminate all but a lesser
or added offense, if on a total evaluation he believes that to be the
more appropriate charge.

The exercise of that discretion, at least prior to charge (See CL
1948, § 767.29 [Stat Ann 1954 Rev § 28.969] requiring leave of
court for a *nolle prosequi*), is generally regarded as unreviewable.
Only in rare cases have courts sought to interfere with the prosecu-
tor's exercise of his pre-charging discretion. See Note, Prosecutor's
Discretion, 103 U Pa L Rev 1057 (1955); Baker, The Prosecutor-
Initiation of Prosecution, 23 J Crim L & C 770 (1933); Ferguson,
Formulation of Enforcement Policy: An Anatomy of the Prosecu-
tor's Discretion Prior to Accusation, 11 Rutgers L Rev 507 (1957);
Kaplan, The Prosecutorial Discretion—A Comment, 60 NW U L Rev
174 (1965); Note, Private Prosecution:  A Remedy for District
Attorneys' Unwarranted Inaction, 65 Yale L J 209 (1955).  *Cf.*
Goldstein, Police Discretion Not to Invoke the Criminal Process:
Low-Visibility Decisions in the Administration of Justice, 69 Yale
L J 543, 560, 561 (1960).

In *Newman* v. *United States* (CA DC, 1967), 382 F2d 479, the
court said the exercise of the prosecutor's charging discretion was
not reviewable by the judiciary.  In *Newman* the court held that a
defendant's constitutional rights were not denied by a refusal to
grant a charge concession allowed a co-defendant.

[8] Miller, Prosecutor Dominance of the Warrant Decision; A Study
of Current Practices, Wash U L Q 1, 11 (1964), discusses the
practice in several States including Michigan.  The article, part of
the study for Professor Miller's forthcoming book, Prosecution, in
the American Bar Foundation's series on the Administration of
Criminal Justice in the United States, traces the evolution of the
office of prosecuting attorney in this country and the decline of the
magistrate's actual exercise of independent judgment on the ques-
tion whether a citizen's complaint shall be prosecuted by issuance
of an arrest warrant.

In Michigan, except where warrants are requested by members of
the department of public safety for traffic or motor vehicle viola-
tions, the magistrate may not issue a warrant in any criminal case,
whether the offense is or is not cognizable by a justice of the peace,
until an order in writing allowing the same is filed with the mag-
istrate and signed by the prosecuting attorney for the county, or
unless security for costs shall have been filed with the magistrate.
CL 1948, § 764.1 (Stat Ann 1954 Rev § 28.860); CL 1948, § 774.4,
as last amended by PA 1965, No 307 (Stat Ann 1968 Cum Supp
§ 28.1195).  Whether the failure to obtain such an order in writing
from the prosecutor is "jurisdictional" (see Mr. Justice Adams'

public interest in bringing the offender to justice, he operates within the range of the discretion allowed him.  However, when he goes beyond those factors and weighs the state of his or the court's backlog in the balance, he employs that discretion in a manner unrelated to the policy underlying delegation of that discretion to him.  Consideration of extraneous factors in the exercise of discretion is, by definition, an abuse of discretion by a public officer.[9]

majority opinion in the 5–3 decision of *People* v. *Holbrook* [1964], 373 Mich 94, and his opinion in *People* v. *Carter* [1967], 379 Mich 24, bearing the signature of 3 justices) or affects only the "lawfulness" of the proceedings (see Mr. Justice O'HARA'S opinion in *People* v. *Carter, supra,* p 43) or has some other consequence (see *People* v. *Griswold* [1887], 64 Mich 722, relied on by Mr. Justice BLACK in his dissenting opinion in *People* v. *Holbrook, supra,* p 99 [bearing the signatures of 3 justices] and in his concurring opinion in *People* v. *Carter, supra,* p 31, and in Mr. Justice KELLY'S concurring opinion in *People* v. *Carter, supra,* p 43 [bearing the signatures of 2 justices]), it is clear as a general proposition that the law contemplates prosecutorial control of the decision to charge, and in practice he does control that decision.

However, as to private prosecutions, see *Beecher* v. *Anderson* (1881), 45 Mich 543, 547; CL 1948, § 775.12 (Stat Ann 1954 Rev § 28.1249) ; compare *Jaminet* v. *The Board of Supervisors of Monroe County* (1889), 77 Mich 245 with *Sunderlin* v. *Board of Supervisors of Ionia County* (1899), 119 Mich 535.

9 Just as it is wrong for a zoning authority to require a land developer to donate a site for a park (*Gordon* v. *Village of Wayne* [1963], 370 Mich 329 [requiring the return of money paid to "park fund"]; *Ridgemont Development Company* v. *City of East Detroit* (1960), 358 Mich 387 [setting aside deeds]), or for a municipal contracting officer to refuse to entertain a reasonable and customarily granted request for extension of time in order to invoke a penalty and compensate the governmental authority for other grievances long since foreclosed (*Oswald* v. *City* of *El Centro* [1930], 211 Cal 45, 51 [292 P 1073, 1075, 71 ALR 899, 903] [setting aside lease for which there was no consideration "unless it can be said that the performance of official duty is the subject of barter"]), so, too, it is an abuse of discretion for the prosecutor to barter his discretion in exchange for a plea.  Compare *Worcester* v. *Commissioner of Internal Revenue* (CA 1, 1966), 370 F2d 713, 718: "To use the power of sentencing to obtain an undertaking to which the court was not entitled was necessarily a misuse of that power."

"An agreement which controls or restricts, or tends or is calculated to control or restrict, the free exercise of a discretion for the public good vested in one acting in a public official capacity is illegal and reprobated by the courts. * * * Public officers * * * will not be permitted to make any agreement among themselves, or with

If the decision to allow a charge reduction were made *solely* on the merits, then the charge reduction would be made without regard to the defendant's willingness to plead guilty to the reduced charge. That the reduction in charge will not be made unless the defendant pleads guilty, that the plea is the *quid pro quo* and not individualization of justice, is revealed beyond dispute by the fact that the concession cannot be obtained except by pleading guilty. Charge concessions allowed daily in cases where the defendant agrees to plead guilty are infrequently granted to a defendant who stands trial. Indeed, it is customary not to dismiss the originally charged higher offense so that if the defendant changes his mind after pleading guilty and the trial judge permits withdrawal of the plea, the defendant can without further ado be brought to trial for the more serious offense.

There is a clear distinction between (i) a decision made prior to focus on an identified accused not to attempt to enforce a particular law so that available prosecutorial resources may be devoted to more pressing matters and (ii) a policy of enforcing a particular law primarily against those of its violators who are unwilling to plead guilty, while violators willing to plead guilty to violation of some *other* law are generally permitted to do so.

Unlike the private litigant who is encouraged to negotiate amicable adjustments of differences, the prosecutor has a duty to exercise the discretion his office vests in him strictly on the merits.[10] The state

others, by which their public action is to be or may be restrained or embarrassed, or its freedom in any wise affected or impaired." 43 Am Jur, Public Officers, § 295, p 104.

[10] "His position is one involving a duty of impartiality not altogether unlike that of the judge himself. We have had occasion heretofore to refer to this duty in these officers of justice." *Meister* v. *People* (1875), 31 Mich 99, 104.

See, also, *Hurd* v. *People* (1872), 25 Mich 405, 416 ("The prosecuting officer represents the public interest. * * * His object

of his or the court's docket has nothing to do with
the propriety of a particular charge reduction for
a particular offender.  Justice is not "individual-
ized" by making charge concessions available almost
universally as long as the offender pleads guilty.
The only "individualization" is that those who plead
guilty do so to some other, lesser charge and those
who stand trial must answer for the greater offense.
To defend this on the ground it is "individualization
of justice" is an obvious distortion of terms.

*Second,* in offering a charge concession *only* in
exchange for a plea, the prosecutor takes upon him-
self the function of the trier of fact.  By offering
the concession *only* in exchange for a plea the prose-
cutor goes beyond the charging function and, by
foreclosing trial review of his evaluation, in effect
passes judgment on the accused as well.  However
convinced the prosecutor may be of the defendant's
guilt, it is the function of the trier of fact, and
not of the prosecutor, finally to pass upon the ac-
cused's guilt.

*Third,* the concession, which is of value to the
defendant,[11] can only be obtained in exchange for

---

*like that of the court,* should be simply justice."  Emphasis sup-
plied.); *Wellar v. People* (1874), 30 Mich 16, 23 ("A public pros-
ecutor is not a plaintiff's attorney, but a sworn minister of jus-
tice"); *People v. Bemis* (1883), 51 Mich 422, 424 ("We have held
that the office of prosecuting attorney was quasi judicial").
   "In the United States, the prosecuting attorney as a public offi-
cial has assumed obligations comparable to those of a trustee."  Note,
34 Ind L J 477, 480 (1959).
   11 It cannot be denied that charge concessions, which all agree the
prosecutor must be able to confer if he is to induce the presently
large number of pleas, are regarded by defendants as having value.
If they were not so regarded by defendants, they would not be an
inducement.  Trying any criminal case costs the State hundreds,
and in many cases thousands, of dollars for the services of prosecu-
tors, judges, and other supporting personnel, and, in some cases,
defense counsel.  Yet were the prosecutor to offer the defendant 1
thin dime for his plea, in contrast with a charge concession which
may save the defendant years in prison and the State thousands of
dollars, all would agree any guilty plea in acceptance of such offer
must be set aside because the defendant waived guaranteed rights
for a price, because the plea was involuntary.

waiver of constitutional and other fundamental
rights, *e.g.*, the right to a trial by jury, the right to
be confronted with the witnesses against him, the
presumption of innocence,[12] the right to have his
guilt proved beyond a reasonable doubt[13] and, in
Michigan, the right to appellate review.[14]

Those who exercise constitutional rights are as
much entitled to whatever concessions the prosecu-
tor dispenses as those who do not. To deny conces-
sions to those who exercise constitutional rights and
grant them to those who waive their rights is to
exact a price on the exercise of guaranteed rights.
This no State may properly do. See *United States
v. Jackson* (1968), 390 US 570 (88 S Ct 1209, 20 L Ed
2d 138), discussed in main text of this opinion fol-
lowing footnote 43.

*Fourth,* the inquiry on remand in this case was
whether the defendant's plea of guilty was voluntary
or (in the words of the relevant statute) "was made
*freely * * * * and without *undue influence*", or
(in the words of the relevant Court rule) "was
*freely,* understandingly, and *voluntarily* made, with-
out *undue influence, compulsion,* or *duress,* and with-
out *promise of leniency.*" CL 1948, § 768.35 (Stat
Ann 1954 Rev § 28.1058); GCR 1963, 785.3(2).

---

[12] See concurring opinion of Justice Douglas, with whom Justice
Black agreed, in *Speiser* v. *Randall* (1958), 357 US 513, 532, 533
(78 S Ct 1332, 1344, 2 L Ed 2d 1460, 1477), stating the presump-
tion of innocence is constitutionally guaranteed. The majority held
the burden of proof imposed by statute there under attack violated
the due process clause. See, also, *Tot* v. *United States* (1943), 319
US 463, 467–470 (63 S Ct 1241, 1244–1246, 87 L Ed 1519, 1524–
1526), and *Dombrowski* v. *Pfister* (1965), 380 US 479 (85 S Ct
1116, 14 L Ed 2d 22).

[13] See dissenting opinion of Justice Frankfurter, with whom Jus-
tice Black agreed, in *Leland* v. *Oregon* (1952), 343 US 790, 802 (72
S Ct 1002, 1009, 96 L Ed 1302), stating that the due process clause
requires the government to prove guilt beyond a reasonable doubt.

[14] While appeals have been allowed as a matter of right under
the new constitution (Const 1963, art 1, § 20), even from guilty pleas,
appellate review of a guilty plea cannot touch upon the merits of
the case. *People* v. *Zaleski* (1965), 375 Mich 71, 83.

One unfamiliar with the day-to-day administration of justice in the criminal courts might express surprise that there is any doubt a promise to eliminate a charge carrying a maximum sentence of life in prison (statutory rape) in exchange for a plea to one carrying a maximum sentence of 10 years (indecent liberties) is a promise of leniency.[15]

It is a familiar principle that a *confession* extracted in exchange for a promise of charge or sentence reduction is inadmissible.[16] Nevertheless, that standard is not applied in determining the voluntariness of a guilty plea,[17] although an accepted plea of guilty, unlike even the most incriminating confession, convicts the accused.[18]

---

[15] The difference between the possible sentences for statutory rape and indecent liberties was emphasized to the defendant by the trial judge immediately before he asked the defendant Byrd if he were willing to plead guilty to the lesser offense (see colloquy quoted in the majority opinion).

[16] See cases collected at 3 Wigmore on Evidence, §§ 834–836; 2 Wharton's Criminal Evidence (12th ed), § 349; and in footnote 6 to *Application of Buccheri* (1967), 6 Ariz App 196, 201 (431 P2d 91, 99); and annotations: Admissibility of pretrial confessions in criminal case—Supreme Court cases, 1 L Ed 2d 1735, 1742, 4 L Ed 2d 1833, 1834, and dictum in *Rogers* v. *Richmond* (1961), 365 US 534, 540 (81 S Ct 735, 739, 5 L Ed 2d 760, 766); *Wan* v. *United States* (1924), 266 US 1, 14 (45 S Ct 1, 3, 69 L Ed 131, 148); *Bram* v. *United States* (1897) 168 US 532 (18 S Ct 183, 42 L Ed 568) (encouraging an accused person to believe he might obtain mitigation of punishment made his statement inadmissible). In *Bram* the following language was quoted approvingly by the court: " 'A confession can never be received in evidence where the prisoner has been influenced by any threat or promise; for the law cannot measure the force of the influence used, or decide upon its effect upon the mind of the prisoner.' " (168 US 532, 543 [18 S Ct 183, 187, 42 L Ed 568, 573].)

[17] A plea of guilty induced by a threat to use physical force would be involuntary and void. *Waley* v. *Johnston* (1942), 316 US 101 (62 S Ct 964, 86 L Ed 1302). Although the *Waley* v. *Johnston* court indicated that voluntariness of a guilty plea is to be judged by the same standards applied to confessions, those words have not influenced judicial attitudes about plea bargaining. No plea in return for a concession could survive application of the standards applied to confessions. The case law concerning plea bargaining is discussed in part V, *infra*.

[18] *Kercheval* v. *United States* (1927), 274 US 220, 223 (47 S Ct 582, 583, 71 L Ed 1009, 1012).

### III.

Various formalistic distinctions and arguments have been advanced in order to provide a philosophical basis for the present practice.

### (a)

It is said that the prosecutor does not make any *promise* to the defendant but merely agrees he will not *object* to the trial judge's acceptance of a plea to a lesser offense, or he will move the court to add a count to which the defendant may plead guilty if he is so inclined. It is even said that there is no agreement on the part of the prosecutor or the court not to try the defendant for the originally charged offense.[19] It may well be that in most cases no such commitment is expressed. It need not be expressed; it would be superfluous. It is well understood that the defendant will not have to stand trial on the originally charged offense if the judge accepts his plea to the lesser or added offense. That there is no need to express that consequence indicates the promise is implicit in the arrangement, not lack of a promise.

Even if it were possible—as in a case where conviction on the reduced charge following acceptance of a guilty plea would raise the double jeopardy bar to proceedings on the originally charged offense— to view the matter as if there were no promise, still the element of exchange, the exchange of the plea for the valued reduction in charge, impermissibly taints what is done.

---

[19] Proponents of plea bargaining cannot have it both ways. They cannot contend negotiations are necessary to obtain pleas and deny that negotiations take place. They cannot insist incentives are necessary to obtain pleas and deny they are offered, and deny such offers are accepted.

(b)

Offering another justification for the present practice, some say that since most defendants who plead guilty to lesser charges could be convicted of the more serious originally charged offense, the negotiated plea process is a benefit to the defendant. Viewing the promise as a benefit rather than a detriment, it is suggested that in agreeing to the concession the prosecutor does not make a promise because it is a promise of a benefit rather than of a detriment. The distinction between the promise of a benefit and of a detriment, between a promise and a threat, is not likely to be apparent to the average defendant who is offered the opportunity to plead guilty to a lesser charge or added count, if such distinction is discernible to anyone at all.[20]

We cherish fictions. A fiction now ascendant is that a promise of charge concession is not a promise or at least not a promise affecting the voluntariness of the plea. We further confound ourselves by recognizing the promise as such when a defendant can show it is an *unkept* promise, that the plea bargain was not honored (see part V, infra).

(c)

Defenders of plea bargaining cite as examples of laudable "individualization" through plea bargaining, particular cases where noxious charges have been reduced to less stigmatic ones.[21] However, if

[20] "The difference between a 'threat' and a 'promise', in the context at hand is nebulous. The prosecutor may 'threaten' to file other charges or he may 'promise' not to do so. There is little difference between the 2 expressions except in the emotional tone generated in the reader." *Application of Buccheri* (1967), 6 Ariz App 196, 203 (431 P2d 91, 98).

[21] American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty (1967), pp 46, 47, hereafter cited as ABA Standards, Pleas of Guilty; Newman, Conviction: The Determination of Guilt or Innocence Without Trial (1966), p 97; Task Force Report, pp 10, 11.

such individualization is deemed desirable it could
be achieved without exacting a plea in return for the
reduction in charge, indeed, without any negotiation
with the defendant. It is hard to see how such dis-
cretionary decisions are furthered by—or even how
they can survive—the plea bargaining system. If
the reward of charge reduction is to continue to
serve as an inducement to guilty pleas, the prose-
cutor may but infrequently hand out such reductions,
even where his view on the merits would warrant
or demand it, *unless* the benefited defendant pleads
guilty.

I do not mean to be understood as saying prose-
cutors do not, in particular cases, exercise their
discretion on the merits and permit accused persons
to stand trial on reduced charges. But, to the extent
prosecutors become dependent upon plea bargain-
ing, and thus implicitly devoted to maintaining the
bargaining system, they become less free in the
exercise of their discretion.

### (d)

It has also been said that the process is so cir-
cumscribed it is entirely trustworthy. No matter
how trustworthy a confession is, of course, it must
be excluded if obtained other than in compliance
with standards which, if applied to plea bargaining,
would preclude all plea bargaining. As a general
proposition, most guilty pleas are trustworthy, just
as most confessions are trustworthy, in the sense
that most pleas and confessions are given by guilty
men.

However, just as there is no way of knowing
whether a particular *confession* was given because
it was true or because of the promised concession,
so, too, there is no way of knowing whether a par-
ticular *guilty plea* was given because the accused

believed he was guilty, or because of the promised concession.[22]  Neither prosecutor nor judge[23] will allow a man who asserts his innocence to plead guilty.  Thus, one who desires the benefit of the concession as an alternative to standing trial must convince the court he committed the lesser offense.

An innocent man can be constrained to plead guilty.  Thus, one who desires the benefit of the con-value judgment concerning premeditation, intent or reasonableness of action, his guilt, or at least the degree of guilt, *e.g.*, in homicide, is often debatable. If the evidence against the defendant is substantial, or if because of a prior record it is hazardous for him to take the stand in his own behalf, or if, because he is a recidivist, he faces habitual offender charges, of if the charged offense carries a stiff minimum sentence, entirely apart from whether he is guilty or not guilty or might be found not guilty by the judge or his peers, it may appear to be the better part of wisdom to accept the offered concession.

## (e)

It has also been argued that "the significant question is not how many innocent people are induced to plead guilty but is there a significant likelihood

---

22 In *People* v. *Wolcott* (1883), 51 Mich 612, 615, the court held inadmissible a confession obtained "by impressing upon the mind of the respondent that it would be better for him, or he would get off easier if he made a confession. * * * No reliance can be placed upon admissions of guilt so obtained; for the very obvious reason that they are not made because they are true, but because, whether true or false, the accused is led to believe it is for his interest to make them."

23 *People* v. *Barrows* (1959), 358 Mich 267, 272; see Mr. Justice BRENNAN'S opinion (signed by 4 justices) in *People* v. *Winegar* (1968), 380 Mich 719, for a discussion of earlier authorities; see, also, *People* v. *Stearns* (1968), 380 Mich 704.  Compare *Hulsey* v. *United States* (CA 5, 1966), 369 F2d 284; *McCoy* v. *United States* (CA DC, 1966), 363 F2d 306; *Maxwell* v. *United States* (CA 9, 1966), 368 F2d 735; and *State, ex rel. Schuler,* v. *Tahash* (1967), 278 Minn 302 (154 NW2d 200).  (These cases hold a guilty plea should not be accepted where the defendant denies his guilt.)

that innocent people who would be (or have a fair chance of being) acquitted at trial might be induced to plead guilty?"[24] The form of the query suggests the need to raise standards in the administration of criminal justice. To defend plea bargaining on the ground that our judicial system convicts the innocent as well as the guilty is to adopt an attitude of abandonment, an attitude which would make superfluous all effort to perfect or even improve the judicial process.

Few accused persons whose guilt is debatable— e.g., because their case presents for resolution a debatable value judgment of the underlying facts,[25] or

---

[24] Enker, Perspectives On Plea Bargaining, Appendix A to Task Force Report, pp 108, 113. A similar argument was considered and rejected in Application of Buccheri, supra, n 20, p 205, as smacking too much of "mercantilism", despite its "inescapable pragmatic validity."

[25] It has been suggested the standards governing admissibility of a confession need not necessarily govern admissibility of a guilty plea because a confession is an admission of fact while a guilty plea expresses the defendant's conclusion following his appraisal, and, in a sense, is a prediction of the law's appraisal, of the facts. Note, Guilty Plea Bargaining: Compromises by Prosecutors to Secure Guilty Pleas, 112 U of Pa L Rev 865, 884 (1964). In the abstract the argued for distinction can be drawn. But on analysis it is not meaningful.

Implicit in the argument that a different standard should be applied in determining the "voluntariness" of a plea of guilty is the assumption there may be a difference between the underlying facts and the law's appraisal of those facts, that there is a debatable value judgment to be made. However, it is the atypical, not the typical, case that presents for resolution such a debatable value judgment of the underlying facts. In the typical case the disputed issue is what are the facts, not their correct evaluation—in the typical case once the underlying facts are found the verdict follows irresistibly without further analysis. Where the defendant's state of mind is not in dispute, e.g., most offenses against property (armed robbery, breaking and entering, larceny, etc.), there is no real distinction between the underlying facts and the conclusion based thereon. The accused person either did it or he didn't do it. Generally in such a case the defense is not lack of requisite mens rea but rather noncommission of the acts alleged.

Only where the defendant's participation in the incident has been established, but the defendant nevertheless denies wrongful intent, is there any need to make a value judgment of the underlying facts. For example, in a murder case where it has been established the defendant killed the victim, the defendant's state of mind is generally the disputed critical issue in determining guilt or degree of guilt.

a debatable issue of credibility, or of inferences to be drawn from circumstantial evidence—would decide the debatable issue against themselves, and by pleading guilty forego a more favorable jury or trial judge appraisal, unless influenced to plead guilty by the belief or hope that they may thereby obtain an advantage otherwise unobtainable.  An accused person whose guilt is debatable and who pleads guilty to a lesser offense in expectation of leniency is not merely appraising the evidence.  His plea reflects

---

The argument that a different standard can properly be applied in determining the "voluntariness" of a plea of guilty, based as it is on the atypical factual hypothesis rather than the typical one, does not in any event support plea bargaining in general.

In the atypical case where the correct evaluation of the underlying facts is debatable, as a necessary corollary to the hypothesis that the issue is debatable it must be recognized that the accused person may be innocent, for if the accused person might not be innocent there would be no need for an appraisal, the issue would not be debatable.  If guilt is debatable, if the defendant may be innocent, it is especially important to determine that question freely, without the kind of extraneous pressure inherent in the plea bargaining system.

Extra-judicial *confessions* of guilt, as distinguished from confessions of fact, have never been reviewed by a lesser standard on that account.  Nor has any policy reason been advanced why a less stringent standard should govern the validity of a guilty plea.  It has even been suggested a more stringent standard should be applied in determining the validity of a plea of guilty.  *United States* v. *Gilligan* (CA 2, 1966), 363 F2d 961, 966: "The entry of a plea of guilty demands even more stringent standards than are required for confessions."

On principle it can be argued that the more debatable the defendant's guilt the less justification for allowing him to make his own final evaluation.  Conviction of an accused person can be viewed as a determination that society wishes to sanction particular conduct.  Conviction is costly to society.  One who may theretofore have been a productive member of society, if sent to prison, becomes nonproductive or marginally productive.  Both he and his family are scarred, and their support to some extent becomes a charge on society.  Arguably, one should no more be allowed to convict himself than to acquit himself.

If such defendant-appraisals in *debatable* guilt cases are to be substituted for society-appraisals, the process by which that is done should be entirely different from the plea bargaining process as we know it today.  At the very least there should be a judicial hearing at which *all* the evidence is considered, so that a judge can review the defendant's evaluation and satisfy himself that the defendant's evaluation is one which the law is likely to make.  In this connection see the description of Wisconsin's "little trial" in Newman,

not only a value judgment of the evidence, or, to be more precise, the anticipated evidence, but also an appraisal of the alternatives offered him. For the same reason a confession induced·by promise or threat cannot be used against a defendant, a plea of guilty influenced by the threat and promise inherent in any offer of leniency also cannot support a lawful conviction.

Without an evidentiary hearing, the law cannot say that one who pleads guilty following an offer of leniency was uninfluenced by such offer and made his decision to plead guilty upon an objective appraisal of the anticipated evidence or of the uncertainties of the fact finding process. On the contrary, where the defendant's appraisal of the anticipated evidence or of the fact finding process, or both, and of the offer of leniency are intertwined, and the offer of leniency is conditioned on a decision to offer a plea of guilty, the presumption of experience must be that the offer of leniency was not purely coincidental, but was made to influence the plea, and did so. In any event, a trial of the issue whether the offer influenced the plea is likely to prove more complex[26] than a trial of the disputed issue on the charged offense; it would be simpler and more con-

---

Conviction: The Determination of Guilt or Innocence Without Trial, pp 19, 20.

An opinion of our Court suggests that where the guilt of the accused is debatable his plea must be rejected. See *People* v. *Richard E. Johnson* (1967), 8 Mich App 204, 208, where "the defendant appeared to be uncertain as to whether he intentionally or accidentally pushed the deceased to his death." The Court declared (p 210) that "the equivocal nature of the defendant's answers should have led the trial court to conclude that a question of fact had been presented and accordingly reject the plea of guilty." But see *Griffin* v. *United States* (CA DC, 1968) 405 F2d 1378. See, also, footnote 23. Compare *People* v. *Collins* (1968), 380 Mich 131, discussed, *infra*, footnote 36, and *McCoy* v. *United States* (CA DC, 1966), 363 F2d 306.

[26] See quotation from *Bram* v. *United States, supra*, footnote 16.

sistent with the proper administration of justice to try the meritorious question.

## IV.

The usual practice is to conduct the on-the-record guilty plea proceedings in open court as if there had been no negotiations or agreements.[27]  The reluctance to state on the record the underlying basis for the plea indicates the profession and the courts are sensitive to the basic impropriety of the entire process.

To keep the record unblemished by that which precedes the plea, the defendant who pleads guilty is expected to deny any promises have been made to him, even though he has been promised concessions and has been told the prosecutor will not grant such concessions unless he pleads guilty.[28]  It is, therefore, far from clear whether a particular de-

---

[27] "The system usually operates in an informal, invisible manner. There is ordinarily no formal recognition that the defendant has been offered an inducement to plead guilty. Although the participants and frequently the judge know that negotiation has taken place, the prosecutor and defendant must ordinarily go through a courtroom ritual in which they deny that the guilty plea is the result of any threat or promise." Task Force Report, p 9.  Similarly, see ABA Standards, Pleas of Guilty, p 61.

[28] The following questions and answers were taken down when the defendant Byrd pleaded guilty:

"*The Court:* Has anyone told you you had to plead guilty?

"*The defendant:* No.

"*The Court:* Has anyone promised you would get off easy if you plead guilty?

"*The defendant:* No.

"*The Court:* You plead guilty because you are guilty?

"*The defendant:* Yes, sir.

"*The Court:* You have had an attorney of your own choice?

"*The defendant:* Yes.

"*The Court:* You talked the matter over with him before you offered the plea of guilty?

"*The defendant:* Yes.

"*The Court:* And the court has advised you [of] the possible penalties.  You also understand if I do accept your plea of guilty to the second count of indecent liberties, you cannot later change it or withdraw it as you have made a confession of your guilt in open court?

"*The defendant:* Yes."

fendant, such as the defendant here, answers truth-
fully or untruthfully when he denies such conces-
sions have been promised.[29]

It has been suggested that inquiry by the trial
judge will aid considerably in assuring the plea is
trustworthy.[30]  However, such an inquiry has long
been required in Michigan,[31] and most judges make
these inquiries.  An inquiry was made in the case
at bar.[32]  But a defendant who desires to make a

---

[29] There has been a great deal of discussion of late concerning
the form of the questions to be put by the court to the accused
in accordance with GCR 1963, 785.3 and CL 1948, § 768.35 (Stat
Ann 1954 Rev § 28.1058).  The questioning serves a useful purpose,
but it provides no assurance whatsoever regarding the "truth" of a
negotiated guilty plea, and negotiated pleas are the bulk of the
pleas.  (see footnote 2)  The defendant offering a negotiated guilty
plea must, if he desires the benefit of the negotiation, answer ac-
cording to a prearranged script.  If the defendant is to profit from
a negotiated plea, he must give all the "right" answers at the time
the plea is accepted.  If after acceptance of his plea he seeks to
withdraw it, he must prove with certainty not only that a promise
was made and unkept, but also that he was lying before when he
responded that no promise had been made, and now is telling the
truth in asserting that, in fact, an unkept promise (see part V)
was made.

"If the defendant is disappointed, he may move to withdraw his
plea, but there is no assurance that the motion will be granted,
particularly since at the time he tendered his guilty plea, he prob-
ably denied the very negotiations he now alleges."  Task Force
Report, p 10.

This case will illustrate the quoted statement from the Task Force
Report.  Despite the fact that the trial judge himself stated the
practice is not to permit defendants or their counsel to acknowledge
plea discussions or agreements, the trial judge asked the defendant
and members of his family, who testified in his behalf at the hear-
ing on the voluntariness of his plea and who were present in the
courtroom when he pleaded guilty, why he denied any promises were
made to him and gave details of an offense of which he now claims
innocence.

[30] The ABA and the President's commission recommend that the
negotiated guilty plea process be brought into the open and put
on the record.  ABA Standards, Pleas of Guilty, pp 29, 30; Task
Force Report, pp 12, 13.

[31] See footnote 23.

[32] The "trial" of this case began with brief testimony from a
policewoman concerning the details of the offense which she did not
witness.  The defendant was then asked by the judge whether he
wished to plead guilty to the lesser offense and, when he answered
affirmatively, was asked to describe what he did.  Thereupon he
gave a brief description.  Later he recited the details to the proba-
tion officer who was preparing a pre-sentence report.  The trial

negotiated plea arrangement is in the anomalous position of having to prove his guilt; if he asserts his innocence his plea must be rejected.[33]

While skillful judges cross-examining an accused have on more than one occasion ferreted out a contrived story and rejected a plea based upon such a story, all judges do not make such searching inquiries. If they did, they might often reveal the defendant is guilty of a great deal more than that to which he is pleading guilty, a disclosure which, depending on the trial judge and the circumstances, might create an awkward situation, one endangering the charge reduction and guilty plea desired by prosecutor and defendant alike.

One argument for a new open system is that it would eliminate the perjury implicit in the present system, which requires the defendant to deny any promise has been made to him. However, both the judicial and public consciences may well be outraged where defendant's conduct, truthfully related on the record, constitutes a serious offense and, also related on the record, that defendant is allowed to enter a guilty plea to a less serious offense.[34]

The likelihood is that some judges[35] and, following the publicity which attends public records, much

---

judge in this case took care to assure a factual basis existed for the plea. Not only was there the policewoman's recital of the events as related to her by the girl, but there were also the defendant's admissions in open court. However, just as the defendant is required to deny any promise has been made to him although charge concessions have been promised, he must, if he wishes the benefit of the negotiated concession, also be prepared to acknowledge and, indeed, sometimes testify in detail about the commission of the reduced offense.

[33] See footnote 23 and *People* v. *Richard E. Johnson* (1967), 8 Mich App 204, discussed *supra*, footnote 25.

[34] For example, if in this case the defendant had related facts clearly sufficient to constitute statutory rape and the prosecutor nevertheless pressed only an indecent liberties charge, would the trial judge have acquiesced? If he had acquiesced simply because the defendant and the prosecutor had made an agreement, would the public acquiesce?

[35] However, there is reason to believe the plea bargaining system as

of the public would object to some agreements which
in the past have been allowed. And so once again,
at least as to those judges and the more "delicate"
cases,[36] the parties will have to resort to pre-plea
secret negotiations and prearranged answers and
explanations bearing no necessary relationship to
what in truth has occurred.[37] Nothing could be more
calculated to destroy the integrity of the judicial
process and to denigrate respect for law and order
among those brought to the bar of justice, as also
does the assumption of experienced offenders, all too
frequently an accurate assumption, that a reduction
in the charge can be obtained in exchange for a plea
of guilty.

Unveiling the negotiated plea system will make
more blatant that which is now oblique. Perhaps
that is what the President's Commission on Law En-
forcement and Administration of Justice had in
mind when it concluded its report on this subject
with the thought that "experience with a plea bar-
gaining system in which negotiations are open, vis-

a whole would organize around a requirement of full disclosure of the
negotiated arrangements on the record. See Weintraub and Tough,
Lesser Pleas Considered, 32 J Crim L & C 506 (1942), showing how
the plea bargaining system readily adapted to a New York statute re-
quiring from the prosecutor a statement in writing of his reasons for
recommending acceptance of a particular plea. The requirement is
still part of New York law although the prosecutor may now make
an oral explanation in open court. See Code of Cr Proc § 342-a
(McKinney 1967 Cum Ann pocket part), as amended.

[36] However, the Michigan Supreme Court recently held a conviction
based on a plea of guilty following bargaining may not be success-
fully assailed on the ground that the defendant was guilty of either
the greater offense or no crime at all. People v. Collins (1968), 380
Mich 131; see, also, ABA Standards, Pleas of Guilty, pp 32–34.

[37] "Allowing the defendant to recount the attending events that de-
scribe his involvement in the offense charged is the best procedure by
which the court decides to accept or refuse the plea of guilty. How-
ever, this Court is cognizant of the tendency of defendants to hold
back facts when pleading guilty or when a plea to a lesser offense is
being proffered, to give just sufficient facts to make up the elements
of the lesser offense. When the defendant's testimony discloses that
he is not truthful or has failed to reveal all the facts, the court should
refuse to accept the plea of guilty." People v. Richard E. Johnson,
p 210, supra, footnote 33.

ible, and subject to judicial scrutiny should help to identify the risks involved in the system, and indicate the need for and direction of further change."[38]

Perhaps the wisdom of the fundamental principles which have been eroded by the negotiated plea would be best revealed by bringing into the open the operational consequences of the expediencies with which they contend.

## V.

The negotiated plea system operates invisibly only as to the on-the-record report of the proceedings. The matter has been the subject of judicial opinions, law review articles,[39] books,[40] and now reports by the President's Commission on Law Enforcement and Administration of Justice, and the American Bar Association Project on Minimum Standards for Criminal Justice.

The great weight of judicial opinion supports the retention of plea bargaining.[41]

---

[38] Task Force Report, p 13.

[39] Dash, Cracks in the Foundation of Criminal Justice, 46 Ill L Rev 385, 392 (1951); Polstein, How to "Settle" a Criminal Case, 8 The Practical Lawyer 35 (1962); Newman, Pleading Guilty for Considerations: A Study of Bargain Justice, 46 J Crim L, C & P S 780 (1956); Comment, Criminal Law—Plea of Guilty—Voluntariness of Plea of Guilty Made in Response to Promise of Leniency, 35 NYU L Rev 284 (1960).

Note, Guilty Plea Bargaining: Compromises by Prosecutors to Secure Guilty Pleas, 112 U Pa L Rev 865 (1964).

[40] Newman, Conviction: The Determination of Guilt or Innocence Without Trial (1966); Law Enforcement in the Metropolis (1967), p 132.

[41] The various opinions in *Shelton* v. *United States* [(CA 5, 1957), 242 F2d 101, *reversed* 246 F2d 571 (*en banc*), *reversed per curiam* "Upon the consideration of the entire record and confession of error by the solicitor general that the plea of guilty may have been improperly obtained" (1958), 356 US 26 (78 S Ct 563, 2 L Ed 2d 579)] express the conflicting arguments concerning the propriety of plea bargaining, but the majority opinion on the *en banc* rehearing in *Shelton* clearly represents the view now prevailing.

The United States Court of Appeals for the Sixth Circuit has said: "It is clear, of course, that a plea of guilty induced by a promise of lenient treatment is an involuntary plea and hence void. *Shelton* v. *United States*, 356 US 26, 78 S Ct 563, 2 L Ed 2d 579 (1958), revers-

Although the American Bar Association project expressly approved plea bargaining, the President's commission declined to resolve "the issue whether a negotiated plea system is a desirable method of dealing with cases"[42] and "whether our system of justice should rely to the extent it does on practices that place such heavy pressures on a defendant to plead guilty."[43]

In a case where it was contended that the plea agreement had not been kept, the United States Supreme Court said, in language seemingly applicable to every negotiated plea:

"A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack." *Machibroda* v. *United States* (1962), 368 US 487, 493 (82 S Ct 510, 513, 7 L Ed 2d 473).

Similarly, the Michigan Supreme Court set aside a negotiated plea where the bargain was not performed. *In re Valle* (1961), 364 Mich 471, 475. The Court made the following statement, one equally applicable to a plea following a kept bargain (pp 478, 479):

---

ing 5 Cir, 246 F2d 571." *Scott* v. *United States* (CA 6, 1965), 349 F2d 641 (alleged unkept promise by a state sheriff acquiesced in by Federal officers; evidentiary hearing ordered by 6th circuit).

For a recent collection of authorities, see *Commonwealth* v. *Maroney* (1966), 423 Pa 337 (223 A2d 699), upholding a bargained plea in a murder case in a state where capital punishment may be imposed. Similarly, see *Gilmore* v. *California* (CA 9, 1966), 364 F2d 916, 918. However, see *Application of Buccheri* (1967), 6 Ariz App 196 (431 P2d 91), discussed *infra*, n 46.

The ABA Standards, Pleas of Guilty, p 60 *et seq.* and Task Force Report, pp 9, 10, both state the prevailing view is that plea bargaining is sound.

Contrast: *Griffin* v. *State* (1913), 12 Ga App 615 (77 SE 1030, 1084): "The law favors a trial on the merits." Quoted approvingly in *State* v. *Cochran* (1933), 332 Mo 742, 745 (60 SW2d 1, 2).

[42] Task Force Report, p 10.

[43] Task Force Report, p 13.

"Self-conviction thus obtained may be as mis-
leading, with respect to real evidence of guilt, as a
coerced confession, and is equally violative of due
process." Compare *People* v. *Wolcott, supra,* foot-
note 22.

Although the Supreme Courts of Michigan and the
United States have interfered only where it has
been established that the concession was not deliv-
ered as promised, the distinction between the kept
and unkept promise has not been expressly validated
by either of those controlling authorities.

The United States Supreme Court recently held
the death penalty provision of the Federal kidnap-
ping act unconstitutional (*United States* v. *Jackson*
[1968], 390 US 570 [88 S Ct 1209, 20 L Ed 2d 138])
and, in so doing, made observations which could
preclude all plea bargaining. The Court concluded
that since the death penalty could only be imposed
by a jury and thus could be avoided by pleading
guilty, the death penalty provision unconstitution-
ally chilled the exercise of the right to a trial by
jury. The Court stated (20 L Ed 2d 138, 147, 148):

"Whatever might be said of congress' objectives,
they cannot be pursued by means that needlessly
chill the exercise of basic constitutional rights. *Cf.
United States* v. *Robel* (1967), 389 US 258 (19 L Ed
2d 508, 88 S Ct 419); *Shelton* v. *Tucker* (1960), 364
US 479, 488, 489 (5 L Ed 2d 231, 237, 238, 81 S Ct
247, 252, 253). The question is not whether the
chilling effect is 'incidental' rather than intentional;
the question is whether that effect is unnecessary
and therefore excessive. * * * Whatever the
power of congress to impose a death penalty for
violation of the Federal kidnaping act, congress can-
not impose such a penalty in a manner that need-
lessly penalizes the assertion of a constitutional
right. See *Griffin* v. *California* (1965), 380 US 609
(14 L Ed 2d 106, 85 S Ct 1229).

"It is no answer to urge, as does the government, that Federal trial judges may be relied upon to reject coerced pleas of guilty and involuntary waivers of jury trial. For the evil in the Federal statute is not that it necessarily *coerces* guilty pleas and jury waivers but simply that it needlessly *encourages* them. A procedure need not be inherently coercive in order that it be held to impose an impermissible burden upon the assertion of a constitutional right. Thus the fact that the Federal kidnapping act tends to discourage defendants from insisting upon their innocence and demanding trial by jury hardly implies that every defendant who enters a guilty plea to a charge under the act does so involuntarily. The power to reject coerced guilty pleas and involuntary jury waivers might alleviate, but it cannot totally eliminate, the constitutional infirmity in the capital punishment provision of the Federal kidnapping act." (Emphasis supplied by the Supreme Court.)

One can, of course, distinguish between a potential death sentence and, as in this case, a potential life sentence, although most accused persons must look upon the latter with almost equal horror.

The procedure followed in the instant case "needlessly[44] penalized the assertion of a constitutional

---

[44] When one looks beyond this case of *Byrd* to the overall caseload, and compares the overall caseload with the prosecutorial and judicial resources that have been made available for adjudication of the countless criminal cases, one sees that a very real "necessity" does exist for what was done in this case. As previously stated, it would be impossible with present resources to try even a substantial percentage of felony cases, let alone misdemeanors. It is the necessity of avoiding trials which "justifies" plea bargaining. That, however, is not the kind of necessity which the Supreme Court of the United States has recognized or which any court should recognize as justification for undercutting fundamental, guaranteed rights.

If effective law enforcement could not be organized without plea bargaining, then the kind of necessity spoken of in *Jackson* would exist. However, the only obstacle which prevents organizing a system of justice without plea bargaining is lack of funds, *i.e.*, the failure to allocate adequate funds for that purpose. If lack of funds is ever held to justify undercutting fundamental, guaranteed rights, then there is no right so sacred that it cannot be destroyed by the simple

right" for, if it were thought to be in the public interest to reduce the charge against Byrd from statutory rape to indecent liberties, that could have been done without exacting a plea of guilty to the lesser offense as a condition precedent, as the price therefor, as the *sine qua non.*

If, as the *Jackson* court said, (i) "a procedure need not be inherently coercive in order that it be held to impose an impermissible burden upon the assertion of a constitutional right", (ii) it is enough that the procedure "tends to discourage defendants from insisting upon their innocence and demanding trial by jury" without proof that the plea was "involuntary" in the traditional sense and (iii) the evil is not that the procedure "necessarily *coerces* guilty pleas and jury waivers but simply that it needlessly *encourages* them", then plea bargaining cannot survive.[45]

expedient of denying funds for its protection. If that is not to happen, then, as a matter of unyielding principle, we must not in the name of economy sacrifice fundamental, if you will, necessary, rights.

The Federal courts are faced with much the same docket problems as the State courts. Yet it is clear the procedure outlined in *Jackson* would not have been sustained had the solicitor general argued it expedites the business of the Federal courts by eliminating "unnecessary trials."

The decisions which allow the purchase of informer testimony can be explained on grounds of necessity, the same kind of "exigencies" which excused the warrantless search in *Warden, Maryland Penitentiary,* v. *Hayden* (1967) 387 US 294, 298, 310 (87 S Ct 1642, 1645, 1651, 18 L Ed 2d 782, 787, 794). As to concessions to informers, see *e.g., United States* v. *Hoffa* (1966), 385 US 293 (87 S Ct 408, 17 L Ed 2d 374), *rehearing denied* 386 US 940, 951 (87 S Ct 970, 17 L Ed 2d 880) ; however, see, also Mr. Chief Justice Warren's dissent (p 313) recognizing the need for limitations regarding the use of purchased testimony. But the necessity of effective law enforcement has never been held by the Supreme Courts of either this State or the United States to justify trading with the accused person himself. The same policy which makes inadmissible a purchased confession precludes conviction upon a purchased plea of guilty.

45 Compare *Spevack* v. *Klein* (1967), 385 US 511, (87 S Ct 625, 17 L Ed 2d 574), holding that one cannot be penalized for exercise of the right against self-incrimination, and *Garrity* v. *New Jersey* (1967), 385 US 493 (87 S Ct 616, 17 L Ed 2d 562), holding ineffective waivers of that right obtained by threat of imposition of a penalty. In both these cases, the individuals' means of livelihood was threatened. The

Shortly before *Jackson,* one court held against plea bargaining.[46]

## VI.

Those charged with responsibility for enforcing the law generally do so in a conscientious and responsible manner. The police usually target the guilty. Prosecutors generally charge only the guilty.

penalty facing the plea-bargaining defendant who is weighing a plea of guilty against exercise of his constitutional rights to a jury trial, etc., is a potentially longer sentence or disallowance of probation, an imposition likely to be at least as severe or more severe than loss of one's livelihood.

See, also, *Green* v. *United States* (1957), 355 US 184 (78 S Ct 221, 2 L Ed 2d 199, 61 ALR2d 1119), where, in holding that the Federal double jeopardy provision prevents retrial for an offense greater than the lesser included offense which constituted the basis of a prior, reversed conviction, the Court declared that the defendant need not (pp 193, 194): "barter his constitutional protection against a second prosecution for an offense punishable by death as the price of a successful appeal from an erroneous conviction of another offense for which he has been sentenced to 5 to 20 years' imprisonment. * * * The law should not, and in our judgment does not, place the defendant in such an incredible dilemma. Conditioning an appeal of one offense on a coerced surrender of a valid plea of former jeopardy on another offense exacts a forfeiture in plain conflict with the constitutional bar against double jeopardy." See, also, opinion of Justice Fortas, with whom Justice Douglas joined, dissenting and opinion of Justice Brennan concurring in *United States* v. *Ewell* (1966), 383 US 116, 125, 126 (86 S Ct 773, 779, 15 L Ed 2d 627, 633, 634), condemning overcharging on reindictment following vacation of convictions because apparently designed to chill exercise of post-conviction remedies.

In a number of cases the courts have held recently a harsher sentence may not be imposed upon a successful appellant following his unsuccessful second trial, because to do so would impermissibly chill the right of appeal. See *People* v. *Mulier* (1968), 12 Mich App 28, where Chief Judge Lesinski comprehensively reviewed the case law in other jurisdictions both favoring and opposing this view.

In Michigan the defendant has a constitutional right to appeal. It has frequently been said, however, that due process does not require appellate review. 16A CJS, Constitutional Law, § 594; 16 Am Jur 2d, Constitutional Law, § 584. The decisions prohibiting harsher penalties following an unsuccessful retrial in those jurisdictions (see *Green* v. *United States, supra,* and cases cited in *People* v. *Mulier, supra*) where defendant's right of appeal is provided for statutorily, not constitutionally, thus recognize that the State may not unnecessarily discourage exercise of *non*-constitutional, fundamental guaranteed rights.

[46] *Application of Buccheri* (1967), 6 Ariz App 196 (431 P2d 91). In that case, Arizonia's intermediate appellate court reviewed the conflicting opinions in *Shelton* (see footnote 41) and concluded that it would (p 205): "take the 'high road', the guideposts of which may

Defense lawyers ordinarily do not permit an inno-
cent man to plead guilty. Judges are conscientious
in protecting the rights of the accused. It is the
basic integrity of the men who administer the system
which has prevented the more serious abuses to
which the negotiated plea is subject from manifest-
ing themselves with such recurring regularity that
it would have long ago been abolished.

The negotiated guilty plea is, nevertheless, funda-
mentally unsound. Besides the fact that it is in-
consistent with established standards, those regard-
ing the exercise of discretion by public officers and
those surrounding the administration of justice gen-
erally (see part II, *supra*), it is turning what used
to be an accusatorial-adversary judicial system into
an inquisitorial-administrative process.[47] It en-

be found in the dissenting opinion in the last rendition of the fifth
circuit in the oscillating case of *Shelton,* which opinion would appear
to be that favored by the Supreme Court of the United States. See,
also, *Application of Parham* (1967), 6 Ariz App 191 (431 P2d 86),
and *Scott* v. *United States* (CA 6, 1965), 349 F2d 641, discussed in
footnote 41.

See *Heideman* v. *United States* (CA 8, 1960), 281 F2d 805, 809,
stating that an analogy can be drawn to cases concerning the volun-
tariness of confessions and that a hearing should be held on defend-
ants' claims that their pleas of guilty were induced by representations
of the prosecutor; similarly, see *Shupe* v. *Sigler* (DC Neb, 1964), 230
F Supp 601.

In *People* v. *Merhige* (1920), 212 Mich 601, 612, the Court declared
that the "applicable rule" was that a guilty plea "'should not be in-
duced by fear, misapprehension, persuasion, promises, inadvertence, or
ignorance.'" That language was relied on by our Court in *People* v.
*Hoerle* (1966), 3 Mich App 693, where the original charge was *second*-
degree murder. The juvenile division waived jurisdiction and the de-
fendant was arraigned in recorder's court on *first*-degree murder; how-
ever, subsequently he was permitted to plead guilty to *second*-degree
murder. Our Court found both charging first-degree murder and the
acceptance of a guilty plea under the circumstances to have been error,
declaring (p 699): "It cannot be said that defendant's plea of guilty
to second-degree murder was free of misapprehension and fear of an
improper conviction on the charge of first-degree murder. Such fear
and misapprehension is sufficient to render the plea of guilty to second-
degree murder involuntary."

"It is well settled in this State that a conviction on a plea of guilty,
involuntarily rendered, presents grounds for a new trial."

[47] See *Rogers* v. *Richmond* (1961), 365 US 534 (81 S Ct 735, 5 L
Ed 2d 760).

courages practices in which neither the profession
nor the judiciary can take pride and establishes
precedents which are bound to affect the administra-
tion of justice adversely in other areas. It destroys
the integrity of the conviction record with the result
that neither the parole board nor, upon commission
of another offense, a subsequent sentencing judge
knows whether one originally charged with X and
allowed to plead guilty to X–1, X–2 or attempted
X or Y was really guilty of the more serious charge
(see footnote 48).

If the negotiated charge concession is not justified
by the merits, then the injury is to society. If a
charge concession justified by the merits can only
be obtained by waiver of a jury trial, then it is the
defendant who is unjustly importuned, it is the con-
stitutional right which is tarnished. If the conces-
sion is illusory rather than real, *e.g.,* a reduction in
charge but no reduction in sentence, the trial judge
sentencing just as he would on the greater offense,
then, frequently, the defendant has been misled[48]
into giving up his right to a trial.

A plea of guilty uninfluenced by official pressure
(overt or covert) or promise (explicit or implicit)
is, of course, perfectly proper. But the administra-
tion of criminal justice has become so dependent
upon a large volume of guilty pleas and the pro-
fession (prosecutorial and defense) and some courts

---

[48] "The practice of reducing most charges to obtain pleas of guilty
results in judges' tending to give just as much attention to original
charges as to the ones pleaded to. In consequence, the reduction agree-
ment does not always result in the imposition of a minimum sentence
lower than that which would have been imposed upon conviction for
the original offense." Law Enforcement in the Metropolis (1967),
p 156. As a general proposition in Michigan the court controls only
the minimum sentence under our indeterminate sentence law.

Compare *Dillon* v. *United States* (CA 9, 1962), 307 F2d 445, 450;
*Smith* v. *O'Grady* (1941), 312 US 329, 334 (61 S Ct 572, 574, 85 L
Ed 859, 862); *Reddick* v. *State* (Fla App, 1966), 190 So 2d 340;
*United States* v. *Lester* (CA 2, 1957), 247 F2d 496, 501; *State* v.
*Cochran* (1933), 332 Mo 742 (60 SW2d 1, 2).

so widely encourage offenders to believe they have
something. to .gain by pleading guilty, that it is to
be doubted whether many who plead guilty do so
without harboring the hope that they will receive
some leniency.[49]

## VII.

The present state of affairs was brought about
by willingness to reduce standards of justice to
conform to the resources made available for its ad-
ministration. I suggest the time has come for the
judiciary to start moving in the other direction, and
to insist on a return to first principles as quickly
as possible. It will, of course, take years, if not
decades, to accomplish the elimination of *negotiated*
pleas. The necessary increase in prosecutorial staff
and judicial facilities cannot be brought about with-
in a short period of time.

The public must be made aware that, under pres-
ent budgets, most felons are permitted to plead
guilty to a charge substantially less than the crime
of which they are guilty. We are all concerned with
the significant increase in crime. Yet many who are
apprehended are too soon back on the streets because
of concessions that would not be considered if facil-
ities for prosecution and adjudication were more
adequate. Police officers bring in an accused person
and the prosecutor is confronted with the choice of
allowing him to plead guilty to a lesser offense or
waiting for months and sometimes years to bring
him to trial, by which time witnesses may have lost
interest, memories may have faded, and for those
and other reasons prosecution is difficult, if not im-
possible, all of which aids defense counsel in exact-

---

[49] "Even when there have been no explicit negotiations, defendants
relying on prevailing practices often act on the justifiable assumption
that those who plead guilty will be sentenced more leniently." Task
Force Report, p 9.

ing concessions which otherwise would not be at all appropriate and which no prosecutor would otherwise consider.

The judiciary need not accept the inadequate budgets allowed for the administration of justice. Ours is a co-equal branch of government. Those charged with the administration of justice may properly insist on appropriations sufficient to enable prosecutors and courts to enforce the laws that the legislature and local units of government enact.[50] I respectfully urge that we not continue to denigrate the judicial system by attempting to organize the administration of criminal justice around an ever-declining prosecutorial and judicial budget per case.

The calendar problem is, of course, real. The administration of criminal justice has become so dependent upon plea bargaining that it could not be eliminated *instanter* by decree. To do so would be to inundate our presently overtaxed prosecutorial and judicial facilities. This, of course, is a matter for realistic concern—as is the fundamental soundness of a system of justice whose very ability to function is said to depend on the practices described.

The problem is not unlike that of segregated schools in that it is too ingrained to be eliminated forthwith. I suggest that we proceed to its eventual elimination.[51]

I suggest that we begin now gradually to eliminate plea bargaining. Bargaining could be prohibited where the accused faces a long term on the original charge, as did the defendant in this case. Alternatively, bargaining could be prohibited except where

[50] See *Leahey* v. *Farrell* (1949), 362 Pa 52 (66 A2d 577); *Noble County Council* v. *State* (1955) 234 Ind 172 (125 NE2d 709).
[51] See Schaefer, The Control of "Sunbursts": Techniques of Prospective Overruling, 42 NYU L Rev 631 (1967). The author is a justice of the supreme court of Illinois.

the differences in the potential sentences between the original and the reduced charge are relatively small. Where to draw the line—what is a long term and what is a short term, or what is a relatively small difference—need not be delineated now. The line can move as greater resources become available.[52]

The foregoing, if adopted on an experimental basis, might well reveal whether and how we can operate without plea bargaining.[53] There may be far fewer pleas of guilty, but many will still plead guilty.[54] Prosecutorial charging practices may be modified. Reforms in substantive criminal law would help.[55]

The issue should be faced squarely. The pragmatic basis of plea bargaining, the need to encourage most offenders to plead guilty, should be acknowledged. Plea bargaining should not continue to be defended as admirable, when it is not. Until we acknowledge that expediency, not principle, underlies plea bargaining, we will not be impelled to adopt corrective measures.

## VIII.

In the present case the defendant claimed not only that a charge concession had been promised to him,

---

[52] Bargaining with those facing recidivist charges and charges carrying minimum sentences could also be limited in view of the special pressures on defendants in such cases. For case authority on bargaining with those facing recidivist charges, see footnote 8 of *People v. Hollman* (1968), 12 Mich App 231.

[53] The adoption of the foregoing proposal would not prevent individualization of justice by charge reduction. However, should any rule be adopted prohibiting charge concessions in respect to particular offenses in *exchange* for guilty pleas, it would be necessary, in order to make the rule effective, to provide that where there has been a charge reduction in respect to an offense for which bargaining is forbidden, the offender will not be permitted to plead guilty to the reduced charge and must stand trial thereon.

[54] See Reik, The Compulsion to Confess, republished by Farrar, Straus & Cudahy (1959), p 175, *et seq*.

[55] See Allen, the Borderland of Criminal Justice, University of Chicago Press (1964).

the truth of this appearing on the record, but also that a sentence concession was promised. He asserts he was told by his lawyer that if he pleaded guilty to the reduced charge he would not go to jail but would be placed on probation, that probation had been arranged with the judge.

Under present law a defendant who proves his plea was induced by an *unkept* promise is entitled to have the plea set aside, at least where the promise was made by the prosecutor. *In re Valle, supra.* Having in mind that defense counsel are officers of the court and an integral part of the negotiating

---

56 Where the defendant's lawyer honestly tells him he may expect a lighter sentence if he pleads guilty but does not imply this has been discussed or arranged with a judge or some other official (such as the prosecutor) who may influence the judge's decision, it is generally held the defendant may not have his plea set aside because the lawyer's expectation proves wrong. *Meredith* v. *United States* (CA 4, 1953), 208 F2d 680; *Floyd* v. *United States* (CA 5, 1958), 260 F2d 910; *United States* v. *Berry* (CA 7, 1962), 309 F2d 311; *Dewey* v. *United States* (CA 8, 1959), 268 F2d 124; *Edwards* v. *United States* (CA DC, 1958), 256 F2d 707; *State* v. *Andrews* (1963), 79 NJ Super 17 (190 A2d 201); *Jacobs* v. *Warden of the Maryland Penitentiary* (1963), 232 Md 627 (192 A2d 786). But see *Wilson* v. *Rose* (CA 9, 1966), 366 F2d 611.

However, it has been said that the plea should be set aside where it is established that the plea followed a mistaken statement by the defendant's attorney that a concession had been arranged with the judge or prosecutor, without regard to whether the judge or prosecutor led the attorney to make the statement. *Gilmore* v. *People* (CA 9, 1966), 364 F2d 916; *People* v. *Walston* (1967), 38 Ill 2d 39 (230 NE2d 233); *United States* v. *Banmiller* (CA 3, 1963), 325 F2d 514, discussed in footnote 57.; *Davidson* v. *State* (1968), — Idaho — (437 P2d 620, 623) dissenting opinion of Justice McFadden, the majority disposing of the case on the ground that the petition alleged only advice of defense counsel as to the anticipated sentence, and did not allege that counsel advised that an agreement regarding sentence had been entered into with the prosecutor or judge; *United States* v. *Mancusi* (ED NY, 1967), 275 F Supp 508, 517. Contrast: *People* v. *Gilbert* (1944), 25 Cal 2d 422, 443 (154 P2d 657, 668); *Commonwealth* v. *Scoleri* (1964), 415 Pa 218 (202 A2d 521).

Admittedly, the judicial statements in Michigan are not entirely in accord with the view expressed here. See *People* v. *Walls* (1966), 3 Mich App 279 (defendant claimed his attorney's alleged promise of probation was agreed to by an assistant prosecuting attorney); *People* v. *Vasquez* (1942), 303 Mich 340 (alleged promise by sheriff); *People* v. *Goldman* (1929), 245 Mich 578 (alleged statements by defendant's attorney and an assistant prosecutor as to defendant's "probable"

process, promises[56] made by them, if unkept, should also entitle the defendant to have his plea set aside.

At the hearing following our remand, the trial judge stated he had not participated in any discussions concerning defendant's sentence preceding his plea. Thus, if the defendant's lawyer did in fact make the alleged promise of probation, it was a

---

sentence). On the other hand, see *People* v. *Wolcott* (1883), 51 Mich 612, where the "intimations" were by police officers.

In all events, in this case the promise, if made, was totally false. The trial judge declared there had been no discussions with him. To apply to a knowingly false statement by a lawyer the same standard used where the lawyer honestly states his best judgment and makes no claim the prosecutor or the judge has made a commitment or given an intimation in the matter would be to insulate from attack a fraud on the defendant client.

Query, whether the rule expressed in the cases cited in the first paragraph of this footnote can properly be applied today. If it were shown, as appears to be the case in most large cities (see ABA Standards, Pleas of Guilty, pp 3, 4, 37, 38; Task Force Report, p 11; Law Enforcement in the Metropolis, p 156; Note, The Influence of the Defendant's Plea on Judicial Determination of Sentence, 66 Yale L J 204 [1956]), that it is widely believed by prosecutors, defense counsel and the general public that those who plead guilty will be dealt with more leniently than those who do not, if many judges in fact so sentence (see authorities just cited), or if it is shown that the sentencing judge follows such a practice and that fact has become well known (*e.g.*, the sentencing judge in *United States* v. *Wiley* (CA 7, 1959), 267 F2d 453; *United States* v. *Wiley* (CA 7, 1960), 278 F2d 500, *United States* v. *Wiley* (ND Ill, 1960), 184 F Supp 679), then entirely apart from whether it is or is not proper for a trial judge to grant leniency to guilty pleaders and deal more harshly with those convicted following a trial, don't we have something more before us than a misguided attorney's prediction? On such a factual showing would we not then be faced with an official policy of encouraging defendants to believe they have something to gain by pleading guilty, one for which prosecutor and judge as well as defense counsel must share responsibility? If the judiciary as a whole does not by word and conduct do what it can to eliminate that belief, can it be heard to say that defense counsel alone is responsible for the fact that belief is held and disseminated? And if the tacit promise implicit in that officially encouraged belief is not fulfilled, is it any less a breach of promise because the judge did not expressly corroborate the attorney's "mere prediction" the judge would deal more leniently with the offender if he pleads guilty? There can only be one answer: all those who participate must share both responsibility and accountability. Compare *Reddick* v. *State* (Fla App, 1966), 190 So 2d 340; *United States* v. *Lester* (CA 2, 1957), 247 F2d 496, 501; *State* v. *Cochran* (1933), 332 Mo 742 (60 SW2d 1).

There is no valid analogy between an attorney's prediction to his client of how a judge may decide a question of law or fact or exercise discretion in an ordinary case (which prediction, if erroneous, should

promise known by the lawyer to have been false when made and was a fraud on his client. It is a well-settled principle that a judgment entered by confession or default will be set aside if the result of fraud.[57]

not entitle the client to relief) and a prediction by an attorney to his client based on the assumption the judge has adopted a covert policy of taking into consideration extraneous impermissible elements in exercising discretion (which, in my opinion, should entitle the client to relief if for no other reason than that the judge has adopted such a policy). That it is not permissible for a trial judge upon sentencing to count against a defendant the fact he was convicted following a trial, and did not plead guilty, see footnote 4 of *People* v. *Earegood* (1968), 12 Mich App 256.

[57] In *Searles* v. *Christensen* (1894), 5 SD 650 (60 NW 29), the lawyer knowingly misinformed his client, the defendant, that the trial date had been postponed; a judgment by default against defendant was set aside because of the defense attorney's fraud upon the defendant, although it was not claimed the plaintiff participated in the fraud. Similarly, see *E. & H. T. Anthony & Company* v. *Karbach* (1902), 64 Neb 509 (90 NW 243); 30A Am Jur, Judgments, §§ 657, 658; 49 CJS, Judgments, §§ 365, 366, 368; GCR 1963, 528.3, 785.1(1).

In *United States, ex rel. Wilkins*, v. *Banmiller* (CA 3, 1963), 325 F 2d 514, three dissenting judges stated that a plea of guilty should be set aside where the defendant's attorney made false statements to the defendant concerning the evidence against him and concerning alleged arrangements with the district attorney and the court for the defendant to receive a light sentence should he plead guilty (p 525):

"Wilkins' counsel shirked his duty and lied to him as to essentials of his case in order to get him to plead guilty. Both effective and honest assistance were, therefore, lacking at the relator's trial. The trial was in direct contravention of traditional notions of fairness. The state must bear the onus for this situation. Its responsibility does not necessarily rest upon fault. Rather its responsibility is a broader, vicarious accountability for that which transpires in criminal proceedings conducted by it. When the State secures a conviction, that conviction must rest upon a solid foundation. The test is whether or not the defendant received a fair hearing. That test cannot be deemed to have been met under the circumstances presented by the case at bar."

Four judges did not reach the question because the defendant in their view had not proceeded properly in testing his State court conviction in the United States district court.

Compare *Poe* v. *United States* (D DC, 1964), 233 F Supp 173, affirmed 122 App DC 163 ([CA DC, 1965] 352 F2d 639), and *Commonwealth, ex rel. McKenna*, v. *Cavell* (1966) 423 Pa 387, 393 (224 A2d 616, 619), where convictions (after trial in *Poe*, upon plea of guilty in *McKenna*) were set aside, it appearing the defendant had been misinformed by his lawyer as to the consequences of his taking the stand. However, most cases deny relief where the claim is based on alleged trial counsel error. See Waltz, Inadequacy of Trial Defense Representation as a Ground for Post-Conviction Relief in Criminal Cases, 59 NW U L Rev 289 (1964).

In this case, the inquiry on remand was whether the disputed promise was or was not made.[58] Under existing precedent the trial judge must decide to accept or reject the defendant's claim. He cannot venture into any middle ground. This pits the convicted criminal against one, possibly two, members of the profession and imposes an almost impossible burden of proof.

I suggest, in claims of this kind, the test should not be whether the defendant establishes the truth of his claim by a preponderance of the evidence. Rather, his claim should be deemed established, and the plea set aside, if the evidence causes the judge to entertain a reasonable doubt whether the plea was "encouraged" (*Jackson, supra*) by a false promise of leniency in sentencing. Under a reasonable doubt standard,[59] the court need not wholly

---

Relief from *default* judgments has been allowed in civil cases where the lawyer acted *negligently* or *mistakenly* and his client, the default judgment debtor, acted in good faith. *Taylor* v. *Pope* (1890) 106 NC 267 (11 SE 257); *MacCall* v. *Looney* (1903), 4 Neb (unoff.) 715 (96 NW 238); *Jeffords* v. *Young* (1929), 98 Cal App 400 (277 P 163); *Baskin* v. *Aetna Life Insurance Company* (1935), 190 Ark 448 (79 SW2d 724); *Thoreson* v. *Central States Electric Company* (1939), 225 Iowa 1406 (283 NW 253); *Andring* v. *Andring* (1965), 3 Ohio App 2d 417 (211 NE2d 59).

For a general discussion and authorities going both ways, see Notes: Attorney and Client: Negligence or Misconduct of Attorney: New Trial, 14 Corn L Q 469 (1929); Attorney and Client—Criminal Law—New Trial Because of Incompetency of Counsel, 14 Iowa L Rev 476 (1929).

[58] It would tend to prevent cases of this kind if, before accepting a negotiated plea, the trial judge would require the prosecutor and defense counsel to state whether any sentence concessions have been promised and ask them to put on the record the history of any negotiations for charge or sentence concessions, and would ask the defendant whether any sentence concessions have been promised. Such inquiry by the trial judge is recommended by both the ABA and the President's commission (see footnote 30). That, of course, will not be a guarantee of trustworthiness, because it is still possible a defendant could be led to believe sentence concessions have been agreed upon which may only be obtained covertly and which he and counsel must deny in order to enjoy the benefit of the deal. But it would tend to eliminate problems of this kind.

[59] A question not decided by the majority in *Jackson* v. *Denno* (1964), 378 US 368 (84 S Ct 1774, 12 L Ed 2d 908, 1 ALR3d 1205), or by its Michigan descendant, *People* v. *Walker* (on rehearing)

adopt the defendant's story, or wholly reject the attorney's story. He may simply conclude that, on the evidence, he is in doubt, and, the defendant being entitled to the benefit of that doubt, he will set aside the plea and allow the defendant to stand trial.

The trial judge in this case did not apply a reasonable doubt standard, because the reasonable doubt standard has not been adopted for this kind of case. I suggest it should be adopted and, if it had been, the trial judge in this case might well have entertained a reasonable doubt and permitted

(1965), 374 Mich 331, is what standard governs the decision of the judge in his separate hearing as to voluntariness of a *confession*. See Justice Black's dissent in *Jackson* v. *Denno, supra,* p 401. In *Bram* v. *United States* (1897), 168 US 532, 565 (18 S Ct 183, 195, 42 L Ed 568, 581), the court declared that "any doubt as to whether the confession was voluntary must be determined in favor of the accused". Holding that the judge must be satisfied of the voluntariness of a confession beyond a reasonable doubt before he submits it to the jury, are *United States* v. *Inman* (CA 4, 1965), 352 F2d 954; *State* v. *Keiser* (1966), 274 Minn 265, 271 (143 NW2d 75, 79); *People* v. *Huntley* (1965), 15 NY2d 72, 78 (255 NYS2d 838, 843, 204 NE2d 179, 183); and *State* v. *Ragsdale* (1966), 249 La 420 (187 So 2d 427), *certiorari denied* (1967), 385 US 1029 (87 S Ct 758, 17 L Ed 2d 676); *Clifton* v. *United States* (CA DC, 1967), 371 F2d 354, *certiorari denied* (1967), 386 US 995 (87 S Ct 1312, 18 L Ed 2d 341), 1 judge concurring in the result, but dissenting on this issue, disagreed with *United States* v. *Inman, supra,* and held that the judge need not be satisfied beyond a reasonable doubt, but may use traditional admissibility criteria in deciding whether to submit the confession to a jury.

For a table of authorities dealing with the question, covering 19 States and 87 cases, see *State* v. *Keiser, supra,* appendix A, p 272. See, also, *State* v. *Yough* (1967), 49 NJ 587, 601 (231 A2d 598, 604, 605), where the court suggested there exists a "narrow zone" of cases in which the reasonable doubt standard should apply not because of constitutional necessity, but because "in the overall the sound administration of justice may perhaps be better served."

The reasonable doubt standard was recently adopted by the United States Supreme Court for the purpose of determining whether a State court's infringement of an accused person's constitutional right at trial was harmless error. *Chapman* v. *California* (1967), 386 US 18 (87 S Ct 824, 17 L Ed 2d 705), *rehearing denied* (1967) 386 US 987 (87 S Ct 1283, 18 L Ed 2d 241). The same standard was also adopted by our Supreme Court in an opinion signed by 4 justices for the purpose of determining whether nonconstitutional error was harmless. *People* v. *Liggett* (1967), 378 Mich 706, 716.

this defendant a trial by jury on the charge of which
he claims innocence.[60]

---

[60] The trial judge in this case expressed concern that were he to
find for the defendant he would necessarily have to refer the matter
to the State Bar for action against the lawyer who represented the
defendant at the time he pleaded guilty. The present rule concern-
ing burden of proof places both the judge and the defendant in an
unfair position.

Upon a careful examination of the remand hearing transcript, I am
left with a reasonable doubt. Four members of defendant's family,
none of whose credibility was attacked, corroborated his claim that
he repeatedly asserted his innocence to his lawyer, who repeatedly
urged him to plead guilty to the reduced charge rather than risk a life
sentence, adding that defendant was assured probation if he pleaded
guilty. I did not see the witnesses; if I had I might possibly take a
different view. The lawyer, the defendant, and defense witnesses were
all interested witnesses. I acknowledge that we do not simply count
witnesses and that questions of credibility are best resolved by the
trial judge who saw the witnesses.